UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

-vs-                                                          Case No. 6:01-cr-0088-Orl-19KRS

DARRELL WILLIAMS.

_____

# ORDER

This case comes before the Court on the following:

1.    Motion for Return of Seized Property and/or Motion for Recovery of Damages of
      Camille L. Williams (Doc. No. 191, filed December 14, 2005);

2.    Motion for Return of Seized Property and/or Motion for Recovery of Damages of
      Omar Watson (Doc. No. 192, filed December 14, 2005);

3.    Motion for Return of Seized Property and/or Motion for Recovery of Damages of
      Janet M. Bridley (Doc. No. 193, filed December 14, 2005);

4.    Motion for Return of Seized Property and/or Motion for Recovery of Damages of
      Ikeia East (Doc. No. 194, filed December 14, 2005);

5.    Response in Opposition to Motions for Return of Property or Recovery of Damages
      of United States of America (Doc. No. 195, filed December 28, 2005);

6.    Reply to the Government's Response to the Motions of Camille Williams, Omar
      Watson, Janet Bridley, and Ikeia East (Doc. No. 196, filed January 10, 2006);

7.    Motion for Return of Seized Property and/or Motion for Recovery of Damages of
      Adrian Johnson (Doc. No. 204, filed February 2, 2006);

8.      Notice of Filings by United States of America (Doc. Nos. 206-208, filed February 7, 2006, hereinafter "Government Ex."); and

9.      Response in Opposition to Motion for Return of Property or Recovery of Damages (Doc. No. 212, filed February 27, 2006).

## I.      Background

On December 15, 2000, David Williams, Darrell Williams, Janet Bridley, Isabel Watson, and Camille Williams[1] were arrested and charged in a Criminal Complaint. (Doc. No. 1). Subsequently, Darrell Williams, Isabel Watson and Camille Williams waived the requirement of an Indictment. (Doc. Nos. 48, 50, 51, 65). The Government then charged each Defendant by way of an Information with bank fraud in violation of Title 18 U.S.C. § 1344 and charged Darrell Williams with money laundering in violation of Title 18 U.S.C. § 1956 and with possession with the intent to distribute cocaine hydrochloride, in violation of Title 21 U.S.C. § 841. (Doc. No. 68). The Government did not pursue charges against Janet Bridley. (Doc. No. 192, Ex. A.).

In conjunction with these arrests, the Government seized several items of property, including (1) a 2000 Mercedes Benz S430V,[2] (2) a 1998 Ford dump truck, (3) 11 pieces of assorted jewelry, (4) a 1996 Freightliner dump truck, (5) a 2000 Cadillac Escalade, (6) a 1999 Kawasaki jet ski, and

---

[1] Camille Williams, who at the time of arrest was the girlfriend of Darrell Williams, was arrested and charged under the name of Camille Trudis-Watson. (Doc. No. 68, ¶ 3; Testimony of Agent Willie Hawkins on April 18, 2006, hereinafter "Hawkins Test."). Similarly, each Movant has a relationship with David and Darrell Williams. (*Id.*). Janet Bridley is the mother of the two brothers. (*Id.*). Ikeia East was the former girlfriend of Darrell Williams, and Omar Watson is the brother of Camille Williams. (*Id.*). Adrian Johnson represented to the Court that he is the cousin of Darrell Williams. (Closing Argument of Adrian Johnson on April 19, 2006).

[2] This vehicle was originally identified by the Government as a 2000 Mercedes Benz S500, but the Government's subsequent investigation revealed that the vehicle was in fact a 2000 Mercedes Benz S430V modified to appear as the other model. (Doc. No. 104, p. 1 n.2).

(7) a 2000 Chevrolet Monte Carlo SS (together "the subject property"). (*See* Doc. No. 206, Declaration of Douglas A. Kash, ¶¶ 4(a), 5(a), 6(a), 7(a), 8(a), 9(a), hereinafter "Kash Dec."; Doc. No. 212, Declaration of John Hieronymus, ¶ 4(a), hereinafter "Hieronymus Dec.").

Darrell Williams, Isabel Watson and Camille Williams each entered a guilty plea to criminal charges after signing a plea agreement with the Government. (Doc. Nos. 76, 77, 78). According to the terms of his plea agreement, Darrell Williams specifically agreed to the forfeiture of the subject property. (Doc. No. 76). Some of the assets were in the possession or under control of Darrell Williams directly, and some of the assets were in the possession or under control of his nominees. (Doc. No. 76, pp. 11-12).

The plea agreements of Isabel Watson and Camille Williams also addressed forfeiture of the subject property. (*See* Doc. No. 77, pp. 8-11; Doc. No. 78, pp. 8-12). Both of these Defendants agreed that they had "no right, title or interest to the assets to be forfeited by Darrell Williams pursuant to his plea agreement" and that they are "now aware [the subject property was] purchased by Darrell Williams with the proceeds of his illegal drug trafficking." (Doc. No. 77, pp. 8-9; Doc. No. 78, pp. 9-10).

Moreover, while appearing before the Court at his sentencing hearing, counsel for Darrell Williams argued that his client's acquiescence to the forfeiture of the subject property supported mitigating his sentence:

> Mr. [Darrell] Williams was arrested on December 15. He had started legitimate businesses, a dump truck business where he had two dump trucks, and also a hair salon business where he was operating them and they were legitimate money making businesses. He was going to stop the illegal narcotics trade at the end of the year. . . . His desire is to continue to support his children and he was trying to convert in his way from something illegal to something honorable and profitable, legally beneficial to society and, unfortunately, the seed money for all that was from the profits of narcotics.

[Darrell Williams] has agreed and he has forfeited everything from his drug trade. . . . The houses, the dump trucks, the cars, everything he has agreed to forfeit. Even items that were in the names of other family members, he also did the paperwork to have that forfeited to the Government as well and has given up virtually any profits, any proceeds that he's made from this trade.

(Doc. No. 131, Transcript of Darrell Williams Sentencing Proceedings, pp. 52-53). Thereafter, the Court, counsel for the Government, and counsel for Darrell Williams addressed forfeiture of these assets during the sentencing colloquy:

COURT:        It is further ordered that you shall forfeit to the United States those assets previously identified as subject to forfeiture, to wit, the real property located at 2251 Palm View Drive, Apopka, Florida. It's my understanding that the Government is filing a motion or has filed a motion for that forfeiture. Is there any objection?

COUNSEL:    No, Your Honor.

GOV'T:        Judge, you're correct with the Apopka address, but there's more forfeiture of cash and jewelry and vehicles.

COURT:        Those are set forth in the motion?

GOV'T:        Yes. And they're also set forth in the plea agreement.

COURT:        There's no objection to that then.

COUNSEL:    That was in the plea agreement. We're aware of that, Judge.

GOV'T:        May I provide that to your clerk, Judge?

COURT:        Yes, sir.

(*Id.* at 57-58).[3]

---

[3] The sentencing proceedings of Darrell Williams took place before Judge John Antoon II in Orlando, Florida, on September 26, 2001. (Doc. No. 101). During those proceedings, Matthew Perry was counsel for the Government and Mark Blechman represented Darrell Williams. (*See* Doc. No. 131).

Upon the Government's motion, the Court issued a Preliminary Order of Forfeiture immediately following the sentencing proceeding of Darrell Williams which identified for forfeiture approximately $48,465 in cash, a 2000 Mercedes Benz S430V, a 1998 Ford dump truck, the approximately $14,085 in jewelry, a 1996 Freightliner dump truck, a 2000 Cadillac Escalade, a 1999 Kawasaki jet ski, and a 2000 Chevrolet Monte Carlo SS. (Doc. No. 104, filed September 26, 2001). The following day, September 27, the Court issued its written Judgment in a Criminal Case which reduced to writing the prior day's sentencing proceeding for Darrell Williams including the forfeiture of the assets identified in the Court's Preliminary Order of Forfeiture. (*See* Doc. No. 111, p. 6).

On September 17, 2002, the Government moved for the issuance of a final order of forfeiture only for the $48,465 in cash because the Drug Enforcement Administration had already administratively forfeited the 2000 Mercedes Benz S430V, the 1998 Ford dump truck, the approximately $14,085 in jewelry, the 1996 Freightliner dump truck, the 2000 Cadillac Escalade, the 1999 Kawasaki jet ski, and the 2000 Chevrolet Monte Carlo SS. (Doc. No. 127, pp. 1-2). Subsequently, Darrell Williams filed with the Court a motion to vacate, set aside, or correct an illegal sentence under Title 28 U.S.C. § 2255, alleging that the forfeiture was improper. (*See* Doc. No. 128). The Court reserved ruling on the Government's motion until it ruled on the Section 2255 motion of Darrell Williams. (*See* Doc. No. 132).

The Court denied the pending Section 2255 motion on February 27, 2004, and issued a Final Order of Forfeiture on March 17, 2004. (Doc. Nos. 154 through 156). In its Final Order of Forfeiture, the Court vacated its earlier Preliminary Order of Forfeiture (Doc. No. 104) as to the 2000 Mercedes Benz S430V, the 1998 Ford dump truck, the approximately $14,085 in jewelry, the

1996 Freightliner dump truck, the 2000 Cadillac Escalade, the 1999 Kawasaki jet ski, and the 2000 Chevrolet Monte Carlo SS. (Doc. No. 156).

Now, over one year after the Court's Final Order of Forfeiture and over four years after the challenged administrative forfeiture determinations were conducted, Janet Bridley, Ikeia East, Adrian Johnson, Omar Watson, and Camille Williams (collectively the "Movants") request return to them of property which had been seized by the Government pursuant to Federal Criminal Rule of Procedure 41(g), Title U.S.C. § 983, and Title 28 U.S.C. § 2401 *et seq.* (Doc. Nos. 191 through 194, 204). After providing notice to all parties (Doc. Nos. 213, 214), the Court held a two-day evidentiary hearing on the pending motions for return at which all parties were given the opportunity to submit evidence and to present additional arguments. (Doc. No. 223 through 227).

## II.    Discussion

This Court has subject matter jurisdiction over these motions pursuant to Title 28 U.S.C. § 1331 based on the Movants' procedural due process claims.[4] The Court will first address the claims of Janet Bridley, which also will provide the analytical framework for addressing the statutory and constitutional claims of Ikeia East, Omar Watson, and Camille Williams. After analyzing the claims of the other Movants, the Court will address the motion of Adrian Johnson. Lastly, the Court will consider the Movants' arguments that each failed to participate in the challenged forfeiture proceedings because of an alleged side-deal between Darrell Williams and the Government.

---

[4] Once property is retained pursuant to civil forfeiture, instead of for use as evidence, a Rule 41(g) motion is not available. *United States v. Artis*, 2006 W.L. 771177, *1 (11th Cir. 2006).

**A.     The Motion of Janet Bridley for One 1998 Ford Dump Truck and One1996 Freightliner Dump Truck**

Janet Bridley seeks the return of the 1998 Ford dump truck and the 1996 Freightliner dump truck. (*See* Doc. No. 193). Bridley argues that the Government failed to satisfy the requirements of Title 18 U.S.C. § 983 and of procedural due process, and as the Government is no longer in possession of the seized assets because they have been administratively forfeited, she seeks payment by the Government of restitution and damages. (*Id.*). This Court, however, cannot review the merits of an administrative or nonjudicial forfeiture unless the agency failed to follow standards of statutory and constitutional due process. *Mesa Valderrama v. United States*, 417 F.3d 1189, 1194 (11th Cir. 2005). Consequently, the Court must determine whether the Government satisfied these standards.

**1.     Civil Assets Forfeiture Act Claim**

Bridley's claim to set aside the administrative forfeiture of the 1998 Ford dump truck and the 1996 Freightliner dump truck must be first analyzed under the Civil Assets Forfeiture Act of 2000, codified at Title 18 U.S.C. § 983. The Act provides the process and procedure applicable to civil forfeitures as enumerated in the statute. *United States v. One Parcel of Real Prop. Known as 45 Claremont St.*, 395 F.3d 1, 3 (1st Cir. 2004). A forfeiture of property having a value of less than $500,000 can be completed administratively by a declaration, and should a third party claim an ownership interest in such property, a contested forfeiture proceeding is conducted. *See* 18 U.S.C. § 983(a)(2); 19 U.S.C. § 1609. Moreover, the Act provides the exclusive remedy for challenging a civil forfeiture, and a party seeking to challenge an administrative forfeiture is limited to doing so under Section 983(e). *See* 18 U.S.C. § 983(e)(5). That statute provides:

**(e) Motion to set aside forfeiture.--**
**(1)** Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if–

> **(A)** the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>
> **(B)** the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

*Id.* § 983(e)(1). Thus, a motion to set aside an administrative forfeiture may only be granted under Section 983 where the agency failed to provide notice to a person entitled to receive such notice. *Id.* In other words, this Court's review "is limited to determining whether the agency followed the proper procedural safeguards" in forfeiting the 1998 Ford dump truck and the 1996 Freightliner dump truck, and it cannot review the merits of the administrative forfeiture determination. *Mesa Valderrama*, 417 F.3d at 1196.

The record demonstrates that Bridley received written notice of the seizure of both trucks and of the forfeiture proceedings. (*See* Kash Dec. ¶¶ 5(k) through (n), 7(l) to (n), 7(p); Kash Ex. Nos. 63-69, 130-135, 138; Testimony of Alice Brown on April 18, 2006, hereinafter "Brown Test."). The notices informed the recipient that the trucks were seized pursuant to Title 21 U.S.C. § 881, a civil forfeiture statute, and provided the procedure for filing a petition for return of the trucks through remission and the procedure for filing a claim to contest the forfeitures. (*See* Kash Ex. Nos. 63, 65, 67, 130, 132, 134). These notices were sent via certified mail to Bridley's residence, to her attorney, and to the business which owned the vehicles, Dump Services of Central Florida Inc.[5] (*See id.*;

---

[5] The record evidence shows that the residence at 7348 Crooked Lake Circle is owned by Bridley and her husband and that this property is registered as Bridley's Florida homestead property. (Doc. No. 1, ¶ 40; Hawkins Test.). Moreover, Bridley is listed on the notice to the business. (Kash Ex. 134).

Brown Test.; Hawkins Test.). Thus, the record reflects that Bridley received notice reasonably calculated under the circumstances to appraise her of the forfeiture proceedings and to afford her of the opportunity to present her objection. *See Dunsenbery v. United States*, 534 U.S. 161, 167-68 (2002); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). There is no contrary evidence of record. Accordingly, Bridley's Section 983 claim fails.

### 2.   Procedural Due Process Claim

Bridley also raises a procedural due process claim against the forfeiture determination. (See Doc. No. 193, p. 2-3). The Court's review of this claim is limited, however. See *In re $67,470.00*, 901 F.2d 1540, 1545 (11th Cir. 1990). As noted by the Court of Appeals for the Eleventh Circuit:

> This court's reliance on federal question jurisdiction to review the petitioners' due process claim should not be construed as providing a means of circumventing the general jurisdictional bar to a review of the merits of forfeiture decisions. Had petitioners' due process claim gone to the merits of the DEA's decision, by alleging, for instance, that the initial seizure violated due process, we would still be precluded from adjudicating the issue unless it was appropriate to rely upon equitable jurisdiction. Here, the challenge is not to the validity of the seizure or the merits of the agency's forfeiture ruling but to the adjudicatory process itself.

*Id.* at 1545 n.5. The Court, therefore, construes Bridley's due process claim as a challenge to the adjudicatory process used to forfeit the two trucks.

The Due Process Clause of the Fifth Amendment prohibits the Government from depriving any person of property without "due process of law." *Dunsenbery*, 534 U.S. at 167; *see also Jones v. Flowers*, 547 U.S. ___, 126 S. Ct. 1708 (2006). In this context, the United States Supreme Court has determined that individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard." 534 U.S. at 167. While considering the sufficiency of notice to such an individual, a court must determine whether the notice was "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them a opportunity to present their objections." *Id.* at 168.

In this case, the Government carried its burden of showing that notice was sent to Bridley using certified mail to her residence, to her attorney, and to her business. These notices indicated the procedures by which Bridley could petition for return of the trucks through remission or mitigation or file a claim to contest the forfeitures. Taken as a whole, such notice is reasonably calculated to inform Bridley of the pending forfeiture and to permit her to present her objections in the forfeiture proceedings. There is no evidence of record to the contrary. Accordingly, Bridley's procedural due process claim is without merit.

### B.     The Motion of Ikeia East for One 2000 Cadillac Escalade

Ikeia East seeks the return of one 2000 Cadillac Escalade that was seized by the Government on December 15, 2005. (Doc. No. 194). Her motion raises the same claims as those asserted by Janet Bridley. (*Compare* Doc. No. 193 *with* Doc. No. 194).

### 1.     Civil Assets Forfeiture Act Claim

As to her Section 983 claim, East received notice reasonable calculated under the circumstance to apprise her of the forfeiture proceeding and which afforded her the opportunity to present an objection. Written notice was sent by certified mail to East's known residence, but that correspondence was returned without delivery. (*See* Kash Ex. Nos. 168, 169; Hawkins Test.). The Government also sent written notice by certified mail to an address for Ikeia East obtained from the records for this vehicle maintained by the Florida Department of Motor Vehicles. (*See* Kash Ex. Nos. 170, 171, 176; Brown Test.). The receipt for the correspondence was signed by an individual with the last name "East". (*See* Kash Ex. No. 171; Brown Test.). The notices informed East that the

vehicle was seized pursuant to Title 21 U.S.C. § 881, and provided her with the procedures for filing a petition for remission or mitigation and for filing a claim. (*Id.* at Ex. Nos. 168, 170). There is no evidence of record that Ms. East did not receive the written notice of forfeiture proceeding. Because the notice of forfeiture was mailed to her address and the receipt signed by a person with the name of "East", the circumstantial evidence, which is unrefuted, is that East received written notice of the forfeiture proceeding.  Thus East's Section 982 claim fails.

### 2.        Procedural Due Process Claim

As to East's procedural due process claim, the Government has met its burden of demonstrating that sufficient notice was given. As discussed above, written notice was sent via certified mail to East's address that was recorded with the Florida Department of Motor Vehicle in connection with this vehicle. (*See id.* at Ex. Nos. 170, 171, 176). The receipt for this correspondence was signed by an individual with the surname "East", and the notice contained detailed instructions for challenging the merits of the forfeiture proceeding. (*Id.* at Ex. Nos. 170, 171). There is no evidence of record that Ms. East did not receive this notice. Moreover, East did not challenge the sufficiency of such notice. (Brown Test.; Closing Remarks of Ikeia East on April 19, 2005). In these circumstances, such notice is reasonably calculated to apprise East of the seizure and pending forfeiture of the 2000 Cadillac Escalade and to afford her an opportunity to challenge the merits of that proceeding. *See Jones v. Flowers*, 547 U.S. ___, 126 S. Ct. 1708 (2006). Thus, East's procedural due process claim is without merit.

### C.        The Motion of Omar Watson for One 2000 Mercedes Benz S430V

Omar Watson petitions the Court to set aside the forfeiture of one 2000 Mercedes Benz S430V because the Government's forfeiture proceeding violated the provisions of Section 983 and

constitutional due process standards. (Doc. No. 192). Accordingly, the Court's analytical framework addressing Omar Watson's claims is same as for the claims of Janet Bridley and Ikeia East.

### 1.        Civil Assets Forfeiture Act Claim

Omar Watson's claim based on 18 U.S.C. § 983(e)(1) fails because he received sufficient notice of the forfeiture proceedings. The Government sent written notice to Omar Watson by certified mail to his residence and to the address of his business, Row Automotive Group, Inc. (*See* Kash Ex. Nos. 19 through 22). The notices detail the seizure of the 2000 Mercedes Benz S430V and describe the procedures for obtaining remission and for filing a claim for this vehicle. (*See id.*). Moreover, the receipt for the notice addressed to Omar Watson at Row Automotive Group, Inc. was signed by Renee Watson, an individual whom Omar Watson represented was his office manager.[6] (Brown Test.; *see* Kash Ex. No. 20). Thus, the record demonstrates that Omar Watson received notice reasonably calculated to apprise him of the seizure and pending forfeiture of the 2000 Mercedes Benz S430V. There is no evidence of record that Mr. Watson did not receive notice or that notice was insufficient.[7]

Additionally, Omar Watson knew or should have known of the of the forfeiture proceeding as demonstrated by the actions of his business, Row Automotive Group, Inc., in two related forfeiture proceedings. Written notices concerning the seizure of the 1996 Freightliner dump truck

---

[6] While the Government did not offer a signed receipt for the notice sent to Omar Watson's residence,  it did offer the signed receipt sent to Omar Watson at his business. (Doc. No. 22).

[7] Mr. Watson, who participated in the evidentiary hearing, did not testify.

and the 2000 Cadillac Escalade were sent to Mr. Watson at the very same addresses that were used by the Government in the forfeiture proceeding for the 2000 Mercedes Benz S430V.[8] (*See* Kash Ex. Nos. 136, 137, 139, 142, 172, 173, 174). Mr. Watson received written notice of these related forfeiture proceedings by way of Row Automotive Group, Inc. (*See id.*). Renee Watson, acting as President of Row Automotive Group, Inc., submitted petitions for remission for the 1996 Freightliner dump truck and the 2000 Cadillac Escalade, but Omar Watson did not submit a petition for remission or make a claim in the administrative forfeiture proceeding for the 2000 Mercedes Benz S430V. (Brown Test.; Kash Dec. ¶¶ 4(a) through 4(aa)).

In addition, there is no evidence of record that Omar Watson did not receive actual, sufficient notice of the forfeiture of the 2000 Mercedes Benz S430V. The petitions submitted by Row Automotive Group, Inc. strongly suggest that Omar Watson knew of the pending forfeiture proceedings relating to the vehicle seized by the Government on December 15, 2000. As such, the record raises the inference that Omar Watson knew or should have known of the forfeiture proceedings for the 2000 Mercedes Benz S430V in sufficient time to submit a timely claim.

Finally, Darrell Williams testified that he had a conversation with Omar Watson concerning the forfeiture of this vehicle and that Omar Watson informed him of the vehicle's location so that Agent Hawkins could seize it. (Testimony of Darrell Williams on April 18, 2006, hereinafter "Williams Test."). Simply put, this is direct evidence that Omar Watson knew of the seizure and forfeiture proceedings.

For each of these reasons, Omar Watson's Section 983 claim is without merit.

---

[8] These vehicles were seized as a result of the same investigation and within a time span of a few weeks. (Hawkins Test.).

### 2.      Procedural Due Process Claim

Omar Watson's procedural due process claim also cannot stand. As discussed above, Omar

Watson received written notice informing him of the seizure of the 2000 Mercedes Benz S430V.

(Brown Test; *see* Kash Ex. Nos. 19, 20). The notice also provided instructions on the submission

of claims and petitions of remissions, a process which his company Row Automotive Group, Inc.

had availed itself in related forfeiture proceedings. Under these circumstances, Omar Watson

received sufficient notice that was reasonably calculated to apprise him of the administrative

forfeiture and to permit him to challenge its merits. Moreover, there is no evidence of record to the

contrary. Omar Watson's procedural due process claim, therefore, is not supported by the evidence

of record.

### D.      The Motion of Camille Williams for Approximately $14,085 in Jewelry and One Kawasaki Jet Ski

Camille Williams seeks to set aside the forfeiture of seventeen piece of jewelry having a

value of $20,000 and one Kawasaki jet ski. (Doc. No. 191). Although she seeks the return of

seventeen pieces of jewelry, the evidence shows that the Government brought forfeiture proceedings

against only eleven pieces of jewelry valued at approximately $14,085. (*See* Kash Ex. Nos. 71

through 109). As Camille Williams has provided no evidence supporting return of additional items

of jewelry, the Court construes her motion to refer to the eleven pieces of jewelry identified in the

forfeiture documents.

### 1.      Civil Assets Forfeiture Act Claim

Camille Williams' claim under 18 U.S.C. § 983(e)(1) fails because she received sufficient

notice of the forfeiture proceedings. The Government sent Camille Watson written notice,

acknowledged by a signed return receipt, of both these forfeiture proceedings. (*See* Kash Ex. Nos.

105, 106, 200, 201). These notices informed Ms. Williams that these assets were seized pursuant to Title 21 U.S.C. § 881, and provided her with the procedures for filing a petition for remission or mitigation and for filing a claim. Such notice was reasonably calculated to apprise Ms. Williams of the administrative forfeiture and to permit her to challenge its merits.

Camille Williams' Section 983 claim also must be denied because she knew or should have known of the forfeiture proceedings in sufficient time to submit a timely claim. *See* 18 U.S.C. § 983(e)(1)(B). Camille Williams acknowledged in her plea agreement with the Government that she had "no right, title or interest to the assets to be forfeited by Darrell Williams pursuant to his plea agreement" and that she was "now aware the above-listed assets purchased by Darrell Williams with the proceeds of his illegal drug trafficking." (Doc. No. 77, pp. 8-9). The plea agreement lists both the approximately $14,085 in jewelry and the 1999 Kawasaki jet ski as assets purchased with the proceeds of Mr. Williams' drug trafficking. (*Id.*). This plea agreement is evidence that Camille Williams was aware of the ongoing forfeiture proceedings but chose not to file a claim or petition of remission. Moreover, the evidence shows that Darrell Williams received written notice of the seizure and forfeiture of these assets, and as the wife and co-Defendant of Darrell Williams, it strains credulity to think that Camille Williams was not aware of the same. (*See* Kash Ex. Nos. 71, 72, 75, 76, 77, 78, 180, 181, 184, 185).

There is no evidence of record that Camille Williams did not receive adequate notice of the forfeiture proceedings. Accordingly, Camille Williams' Section 983 claim is without merit.

### 2.    Procedural Due Process Claim

Moreover, Camille Williams has failed to sustain a procedural due process claim. First, as stated above, the record demonstrates that Camille Williams received written notice reasonably

calculated to apprise her of the seizure and forfeiture of these assets. Second, the written plea agreement is evidence that Camille Williams was on notice of the pending forfeiture proceedings. Thus, after considering the evidence as a whole, it is clear Camille Williams was apprised of the pending forfeiture proceedings in sufficient time to submit a timely claim, and she did not.

### E.    The Motion of Adrian Johnson for One 2000 Chevrolet Monte Carlo SS

Adrian Johnson moves the Court to set side the forfeiture of one 2000 Chevrolet Monte Carlo SS. (Doc. No. 204). In response, the Government offers the Declaration of John Hieronymus, the forfeiture counsel of the Drug Enforcement Administration ("DEA"), to demonstrate that the vehicle was not administratively forfeited but released instead to an innocent lienholder. (Doc. No. 212).

The Drug Enforcement Administration effected the seizure of the 2000 Chevrolet Monte Carlo SS pursuant to Title 21 U.S.C. § 881(a), which provides for the civil forfeiture of automobiles used "to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" illegal controlled substances. *See* 21 U.S.C. § 881(a)(4);(Hieronymus Dec.). The procedure for seizing property under Section 881(a) is set forth in Title 18 U.S.C. § 981(b). 21 U.S.C. § 881(b). That section states:

> Seizures . . . shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure, except that a seizure may be made without a warrant if--
>
> **(A)** a complaint for forfeiture has been filed in the United States district court and the court issued an arrest warrant in rem pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims;
> **(B)** there is probable cause to believe that the property is subject to forfeiture and--
>    (i) the seizure is made pursuant to a lawful arrest or search; or
>    (ii) another exception to the Fourth Amendment warrant requirement
>    would apply; or
> **(C)** the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency.

18 U.S.C.A. § 981(b)(2). In this case, as the vehicle was seized by federal agents during the arrest of Camille Williams, the question reduces to whether the Government had probable cause to believe the 2000 Chevrolet Monte Carlo SS was subject to forfeiture.

In order to have probable cause to believe that property is subject to civil forfeiture, the Government must have probable cause to believe that a substantial connection exists between the property sought to be forfeited and the prohibited conduct listed in section 881(a). *See United States v. One Single Family Residence*, 933 F.2d 976, 979 (11th Cir. 1991). The Court of Appeals for the Eleventh Circuit defines probable cause as a reasonable ground for belief supported by less than *prima facie* proof but more than a mere suspicion. *Id.* Once the Government satisfies its burden of establishing probable cause, the burden shifts to the movant to establish by a preponderance of evidence a defense to forfeiture. *Id.* This burden may be met by showing that the movant is an "innocent owner" who did not know of the vehicle's connection with drugs or by rebutting the Government's evidence that the vehicle was purchased with proceeds of illegal drug activities. *Id.*

In this case, the Government offered the declaration of John Hieronymus and the testimony of the DEA Agent coordinating the investigation into the drug trafficking activities of David and Darrel Williams. Mr. Hieronymus stated in his declaration that this vehicle was seized from Camille Watson on the day of her arrest, December 15, 2000. (Hieronymus Dec.). DEA Agent Hawkins testified that Mr. Johnson was acting as a straw purchaser for the 2000 Chevrolet Monte Carlo SS, that the vehicle was purchased in the same manner as other vehicles which had been obtained with the proceeds of the Williams brothers' illicit drug activities, and that during the investigation the vehicle was always driven by someone other than Mr. Johnson. (Hawkins Test.). There is no evidence of record rebutting the Government's evidence that this vehicle was purchased with the

-17-

proceeds of drug activity, and there is no evidence of record that Mr. Johnson was an innocent owner of the vehicle. Consequently, the Government has established probable cause, and Adrian Johnson has failed to meet his burden in turn.

As to the quick-release of this vehicle, an innocent lienholder in seized property may claim an exception to the rule that property used to facilitate a felony drug transaction may be forfeited to the federal government. *See* 18 U.S.C. § 981(a)(2) ("[N]o property shall be forfeited . . . to the extent of the interest of . . . [a] lienholder by reason of any act . . . established by that . . . lienholder to have been committed without the lienholders knowledge."); *see also United States v. Real Property Located at 41741 National Trails Way, Daggett, Cal.*, 989 F.2d 1089, 1090-91 (9th Cir. 1993) (noting that "innocent lienholder" and "innocent owner" are synonymous for purposes of Title 21 U.S.C. § 881). Consistent with this statute, the seized property may be "quick-released" to an innocent lienholder in accordance with Title 28 C.F.R. §§ 0.101(c), 8.6.

The record shows that the 2000 Chevrolet Monte Carlo SS was seized from Camille Williams on December 15, 2000. (Doc. No. 212; Gov't Exhibit 2). Before undertaking forfeiture proceedings, the DEA determined that SunTrust Bank of Central Florida NA was an innocent lienholder. (*See id.*). As directed by federal regulations, the DEA then released the vehicle to SunTrust Bank. (*Id.*). In consideration of the release, SunTrust Bank executed a Vehicle Indemnity Agreement wherein it acknowledged that the registered owner of the vehicle was Adrian Johnson. (*Id.*).

Upon review of the record as a whole, it is clear that the DEA was acting within its scope of authority as defined by the controlling statutes and regulations when it "quick-released" the 2000 Chevrolet Monte Carlo SS to SunTrust Bank. *See* 28 C.F.R. §§ 0.101(c), 8.6. Accordingly, there was

no forfeiture by the Government, and to the extent that Mr. Johnson seeks redress, he should look to the lienholder who was given possession of the vehicle, not the Government.

Adrian Johnson's motion therefore must be denied.

**G.      The Court's Equitable Jurisdiction**

In limited circumstances, the Court may exercise its equitable jurisdiction in order to reach the merits of an administrative forfeiture determination. *In re $67,470.00*, 901 F.2d 1540, 1544 (11th Cir. 1990). A court's decision to do so is highly discretionary and must be exercised with great caution and restraint. *Id.* In this case, Janet Bridley, Ikeia East, Omar Watson and Camille Williams do not dispute that each had notice of the challenged administrative forfeitures and seizures nor did they present evidence disputing the sufficiency of such notice. Instead, Movants argue that they did not file claims in the challenged forfeiture proceedings because Darrell Williams allegedly had a side-deal with the Government.[9]

According to Darrell Williams' testimony at the evidentiary hearing, the Government agreed to submit a Motion for a Downward Departure (a "substantial assistance motion") asking the Court for a reduction in Mr. Williams' criminal sentence if the Movants did not challenge the administrative forfeiture of the subject property. (Williams Test.). Mr. Williams testified that he learned of this agreement from his attorney, Mark Blechman, who allegedly worked out the side-deal with the Government, and from two letters from his attorney which purportedly convey the substance of this side-deal. (*Id.*; Claimant's Ex. Nos. 4, 5). According to Mr. Williams, his attorney

---

[9] Although the 2000 Chevrolet Monte Carlo SS claimed by Mr. Johnson was not forfeited, the Court will also consider whether to exercise its equitable jurisdiction to set aside the "quick-release", because Johnson makes the same argument as the other Movants. Obviously, he did not receive written notice as the 2000 Chevrolet Monte Carlo SS was never the subject of forfeiture proceedings.

then coached him on how to answer the Court's questions at the plea hearing in order to get the

benefit of the plea agreement, including falsely stating that the subject property was purchased using

the proceeds from his illegal drug transactions. (Williams Test.). Based on Mr. Williams'

representations about this side agreement to the Movants, who are his mother, his former girlfriend,

his brother-in-law, and his wife, Williams testified the movants did not file claims in the forfeiture

proceedings for the subject property.[10] (*Id.*).

In spite of Mr. Williams' testimony to the contrary, the evidence of record does not show the

existence of a side agreement between Darrell Williams and the Government. First, there is no

credible evidence that the Government entered into such a side agreement. While being questioned

by Camille Williams, Mr. Williams failed to testify that anyone from the Office of the United States

Attorney for the United States District Court for the Middle District of Florida entered into such an

agreement with him. (*Id.*). He testified:

> Q:     Okay.  Mr. Williams, we want to ask that during the course of this
>        proceeding, as far as this case in the beginning, were there any promises
>        made to you and your behalf in terms of this case?
>
> . . .
>
> A:     Yes.  I talked to Agent Hawkins a few times in the county jail, and I did a
>        proffer.  And I spoke to my attorney before I did that, and he was telling me
>        the different things that I would have to say.  He basically, like, prepped me
>        and he told me that I would have to say certain things in order for the
>        government to obtain this stuff.  So, I basically did a proffer and told the
>        government what my lawyer, you know, told me to say about the stuff in
>        order to get a downward departure.

---

[10] The Government did not file a substantial assistance motion with the Court. Agent
Hawkins testified that Darrell Williams provided "minimal" assistance to his investigation, and Mr.
Williams also could not recall what assistance he had provided the Government, if any.

Q:     Okay.  So, the government -- you and your lawyer and the government made
       an agreement?

A:     Yes.  My lawyer several times stated to me that, you know, if I'd done this,
       if I made these statements and if I kept family members from coming forth
       on any claims that I would receive a downward departure.  He even wrote me
       a letter, matter of fact, two letters.

Q:     Is that the letter from Mr. Blechman?  Is this the letter?

A:     Yes.

Q:     So, the two letters that he sent you, that was in regards to the property?

A:     Yes.  Well, if you read the letter, you know, it's in detail.  It explains in detail
       about what was supposed to happen in my case.  One, he explained that if I
       agreed to do this that the drugs in my case would remain under five kis [sic]
       of cocaine.  And two, that I would receive a downward departure, which
       should have led to me having, like, a five-year sentence.

(*Id.*).  Continuing her questioning, Camille Williams tried again to establish that such an agreement

was made.

Q:     You was here when Mr. Hawkins, Willie Hawkins, testified under oath that
       there was no agreements made?

A:     Yes.

Q:     Is there anything that you would like to state that there was an agreement
       made and during the time, you know, the conversations you and him have
       had, as well as your lawyers had, that there was some type of agreement
       going on as far as the property goes?

A:     I mean, yes, it was, I mean, because --

Q:     So, Mr. Hawkins knew about the deal?

A:     Well, of course, he knew.  He was the agent in charge of the case.  And I
       called Mr. Hawkins, as a matter of fact, in one instance and told Mr. Hawkins
       -- well, I called Omar and asked Omar where the Mercedes-Benz was and,
       you know, as a part of my assistance.  And then, I called Mr. Hawkins and
       told Mr. Hawkins where to go pick the car up.

> So that's when Mr. Blechman explained to me that's what I would have to do. I would have to do this. I would have to locate property. I would have to tell the government certain things in order for things to go smoothly with me, you know, as far as with my plea deal.

(*Id.*).

This testimony does not support the conclusion that Agent Hawkins, an employee of the Drug Enforcement Administration, entered into any side agreement with Mr. Williams. Instead, it merely indicates that Mr. Williams had some contact with Agent Hawkins and that Agent Hawkins knew that Mr. Williams would cooperate with the Government in seizing the subject property. Moreover, Agent Hawkins testified directly that no such side agreement was made. (Hawkins Test.). In any event, Agent Hawkins is not an employee of the U.S. Attorney for the Middle District of Florida, the only agency with authority to enter into such a side agreement, and his statements are not binding on the U.S. Attorney.

Secondly, Mr. Williams' attorney cannot bind the Government, and Mr. Williams' testimony about his attorney's statements to him are inadmissible hearsay. At best, Mr. Williams testimony supports only that he discussed a side agreement with his attorney, who was acting as his agent and not as a representative of the Government. The letters addressed to Mr. Williams from his attorney also do not support the conclusion there was a side agreement. The letters, instead, are better characterized as a defense attorney trying to convey the substance of a proposed plea agreement between his client and the Government. They evince nothing more.

Thirdly, Movants present little more than the unilateral assertions and uncorroborated hearsay testimony of Mr. Williams, a witness who admittedly lied under oath to the Court during his plea proceedings, to support their contentions. The Court does not find the testimony of this admitted perjurer credible.

Each Movant was given, and declined, an opportunity to provide additional evidence on this issue, but none did so. Simply put, there is no credible evidence of any side agreement between Mr. Williams and the Office of the United States Attorney for the Middle District of Florida; the statements of Mr. Williams' attorney to Mr. Williams are not binding on the Government; the DEA Agent in charge of the investigation directly denied the existence of a side agreement and is without authority to bind the U.S. Attorney to an agreement in any event; and the testimony of the purported side agreement is based on the statements of an admitted perjurer.  In summary, there is no competent, believable evidentiary support for the contentions of the Movants.

Moreover, the Government did not seize the subject property in callous disregard for the constitutional rights of Movants. *See In re $67,470.00*, 901 F.2d at 1545. The Government seized each asset after an investigation into David and Darrell Williams' illegal drug transactions. It determined that the brothers used individuals as straw purchasers and nominee title holders and that the subject property was purchased with the proceeds of the Williams' illegal activities. Darrell Williams and his wife, Camille Williams, admitted as much in their plea agreements. Thus, the Government acted within its authority when it seized the subject property and forfeited it under Title 21 U.S.C. § 881.

Lastly, as the record shows that each Movant received sufficient notice of the administrative forfeiture proceedings, it is clear that each was already presented with an adequate remedy at law. *See In re $67,470.00*, 901 F.2d at 1545. Where, as here, an individual chooses not to pursue the merits of the forfeiture determinations in the proper forum, it is not appropriate for a court to exercise its equitable jurisdiction to set aside a proper forfeiture or "quick-release." *Id.*

In view of the above, the Court finds that there are no equitable considerations which would warrant invoking its equitable jurisdiction.

**IV.     Conclusion**

Based on the forgoing, the Court **DENIES** the Motions for Return of Seized Property and/or Motions for Recovery of Damages of Camille L. Williams (Doc. No. 191), Omar Watson (Doc. No. 192), Janet M. Bridley (Doc. No. 193), Ikeia East (Doc. No. 195), and Adrian Johnson (Doc. No. 204). The Clerk is directed to transfer each of these motions to a new civil case file. Movants must pay the civil case filing fee within twenty (20) days from the date of this Order and before seeking further relief in this forum. If such fee is not paid in conformance with this Order, the cases will be dismissed without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on June __2__, 2006.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record
Unrepresented Parties